Case No. 15-1071 and 15-1641, consolidated, People v. Edward Hernandez All right, will the attorneys who are going to be handling Hernandez step forward please and identify yourselves, speak up loudly and clearly at all times. Good morning, Stephanie Brunthe from the Office of the State Appellate Defender on behalf of Edmund Hernandez. Good morning, your honors. Assistant State's Attorney David Welch, WUSTH, on behalf of the people of the state of Illinois. All right, thank you. Both sides will have 15 minutes. Counsel, if you want to reserve a few minutes for rebuttal, you certainly can. And whenever you are ready, you can step forward. Both sides understand we have read the briefs, we have read the records. If we don't ask a lot of questions, don't be offended. We have read what you have read. May it please the court, Stephanie Brunthe from the Office of the State Appellate Defender on behalf of Edmund Hernandez, I would like to reserve two minutes for rebuttal. All right, that's fine, counsel. The admission of the unduly prejudicial and cumulative victim-sensitive interview, upon which the state relied on to make inflammatory comments in closing argument, denied Edmund Hernandez a fair trial. Here, the trial court abused its discretion in admitting the victim-sensitive interview, or the VSI, because it had minimum probative value, in light of the fact that the state had already established the extent of her intellectual disability. Prior to admitting... Can I interrupt you for just one second? Sure. I know that witnesses did testify to the young lady's intellectual deficits, and something just came through my head, that's why I stopped you. Sure. I like that phrase, seeing is believing, and I saw the video, and the video was not at all offensive to me, didn't inflame my passion or anything like that. It was just barely teenagers sitting there looking like little girls, smiling, and being asked just a few questions, and was unable to really respond, other than to basically parrot what the person said. And that was it, and it clearly showed her deficits, which was an element of the offense. Why couldn't the state do it? Why is it unduly prejudicial? Just to see an element of the offense that the state's required to prove. Your Honor, because the state had already predicted... They had, as you say, seen is believing, right? It's one of the most... It's one of the most ways to get... To understand how somebody's demeanor and appearance, but they already had introduced a photo of Espy. Yeah, I saw the photo too. The photo looks like she could be a 16 or 17-year-old to me, and it looks like she's older, but the video shows me a little girl. It shows me somebody who's 13, who sounds like, and looks like, and the way she moves and talks. Three. By seeing almost an adolescent communicating childlike, like a toddler, would at least make her vulnerability be at the forefront of the jury's mind when they're deliberating. It's not... Her vulnerability has no bearing on Edwin's guilt or innocence. Her deficits do. So, Your Honor, in this case, unlike cases where, let's say, there's been inflammatory evidence admitted to help establish the element of offense, here we have her lifelong pediatrician who provided very detailed and very clear and easy-to-understand testimony about her intellectual disability. He said, she functions like a 2- and 3-year-old. She says, she parrots words. She has relative autism. She cannot communicate. What more do you need to understand that a girl who has an intellectual disability cannot communicate? It's not a case where we're trying to, where the state was trying to establish the cause of death or some kind of complicated medical testimony about, maybe, the injuries. It's nothing like that. This is very clear-cut and straightforward for the jury to understand. Any reasonable person who has been around a toddler knows how a toddler communicates, or a child of 2 to 3 years of age. They can't form complete phrases. They repeat one or two words. How did that video help except to push to the forefront of the jury's mind her vulnerability? Again, maybe, it would be shocking to the census to see this girl who we expect to be, being an adolescent, be able to communicate as an adolescent, parroting words, just repeating, like, home, when they asked her, the forensic interviewer asked her, who lives at home with you, Stephanie? She said, home, home. How does that, I mean, that just shows that she has cognitive deficits. Which they already established. I hear what you're saying. I mean, after trying cases where pathologists have testified to the cause of death and how the person had gunshot wounds that entered the front of their hand and came into their head, then the photographs are introduced to show the same thing that the doctors testified to. And no one has said that anything's wrong with it. What is different in these cases when the doctors testified that she has cognitive deficits is that they put on a video that it's calm and it's pleasant and it lasted, I don't know, three or four minutes, and there's just really nothing at all offensive about the video. It only shows that this child has cognitive deficits. I just don't know what's offensive about it. That's what shocks the patients. Because I look at it, I'm like, oh, this is such a cute little girl. That's what I thought. Unfortunately, actually, I said, fortunately, she didn't know what happened to her. What I saw. It didn't inflame any passions. I was happy she didn't know what happened to her. Your Honor, I would respectfully disagree. The only purpose of that video was to play at the heartstrings of the jury. Is that relevant? No, it isn't. Why is it not? It's not relevant in light of the seven witnesses who testified. It wasn't just her family. It was the ER doctor, the ER nurse, and her lifelong pediatrician. But that's not a relevant argument. It's overdoing. Right, right. It was overkill. Overkill. It was overkill in this case, which is pretty much what the state's theme of this whole case was, to push the envelope in overkilling, just to make SV's vulnerability the centerpiece of this case. They didn't need to do that. If you took that video away, let's say if the video didn't come in, they could have still established her intellectual disability. As I said, there was that man. You said they had to establish it the way you want them to. No, I'm not saying that they had to. I'm saying that they have to be able to know that this case is emotionally charged as it is. Mr. Hernandez does not make light of the seriousness of the offense, but his verdict cannot be based on evidence that is just geared towards the emotion. I guess that's your argument, that this caused the jury to find him guilty, not the semen on the child that belongs to him, not the fingerprints of his that were, I can't remember where they were, I think on the window or the bed, I can't remember where they are right now. This is my third case today. But, I mean, and the witness who says that he was around the little girl when she sold him to Molly's, and his statement that everything that he says happened in the room, and the ladies laying on the bed says these are the things that said that happened. You don't think that this case was overwhelming, the evidence against this defendant was overwhelming, and how could this possibly, if it was there, change the result of this case? How? Your Honor, this error, we don't know. That's the problem. In other cases where this type of omission of this type of evidence has been found harmless error, we can't say it's not harmless error here because the state specifically relied on the VSI throughout all of the closure and rebuttal arguments to ask, and they specifically implored the jury in rebuttal to return a verdict because they needed to protect one of the most vulnerable members of society, S.U. In other cases, maybe, if they... If they did not have asked that question, if there wasn't a video? Well, because the video, they used the video seven times. They mentioned it at least seven times in closing arguments to call the attention, to remind them that, yes, we need to prove S.U.'s intellectual disability, so consider the video. They didn't dwell on the expansive and detailed testimony of the pediatrician or the nurse who testified that she took a photo that corroborated her testimony, that S.V. couldn't consent to the exam and that she had mental disabilities and that when she examined S.V., she looked oblivious and was very simple. They had what they needed. They pushed the envelope. They just wanted to pile more evidence. And even the state concedes in their briefing that the photo taken by the nurse was sufficient to establish that S.V. had an intellectual disability that prevented her from being able to know what the sex act was or to consent to the sex act. That is why we're saying that while in another case, this video might have been probative, here, it was probative value, it was outright, it was very minimal, and it was... Oh, no, the probative value is great. It shows the child that it can't communicate, and it's childlike. The issue is whether that probative value is overcome by its prejudice. Which it was. But we're just summarizing the argument that probative value is overcome by prejudice because it was cumulative, there was already testimony, there was already the photo that came in, and it added nothing to what the jurors heard. What is interesting, what's very interesting is that the state, the V.S.I. was one of the last things the jurors heard before the state rested in its case in chief. So that would be, because they continued referencing the V.S.I. and the testimony of the intrusiveness of the sexual assault examination, that was at the forefront of the jury's mind when they were deliberating. Despite what you may believe is, I mean, what may be overwhelming evidence, a defendant is still entitled to a fair trial, and we don't know when this type of evidence compounded with the prosecutorial misconduct that occurred. We don't know whether that contributed, if we're not safe to say it didn't contribute, which I don't think we can, he's entitled to a new trial. And again, the state proceeded in closing arguments to secure conviction by inviting the jurors to enter in some sort of empathetic identification with Espy, by also exploiting Nurse Matthews' testimony regarding the sexual assault examination. There's nothing wrong with her testimony, but the prosecutor fabricated or elaborated on certain facts from Nurse Matthews' testimony to ensure that the jury kept thinking about Espy's vulnerability, which again had no bearing on whether Hernandez had committed the offense or not. If we were just to compare Nurse Matthews' testimony with the prosecutor's remarks in closing arguments, she talked about how she was required to ask Espy to undress so that they could collect her clothing and put it in an evidence collection envelope. The prosecutor intentionally described that testimony as saying that they had her strip down her clothes. Again, what was the relevance of that? The facts of the case. Again, it has no bearing. It's not the facts of the case. There was no dispute as to any problems with the collection of the evidence or whether there was a jury custody issue. Nurse Matthews talked about how she collected swabs from Espy to be tested and secured her blood standard. And the prosecutor gets up and says they prodded her. What was the purpose of saying prodding? Prodding, again, just to put the vulnerability of Espy at the forefront of the jury. And again, the prosecutor made this remark during closing argument that he was disingenuous because he asked the jury not to base their verdict on this evidence. No, he said on sympathy. And sympathy. He didn't say don't base your verdict on the evidence. I'm sorry, I misread it. Emotion. He said do not base your verdict on emotion. Do not base your verdict on sympathy. That was the prosecutor's admission that he needed this type of testimony, this type of evidence, and these type of comments that he was making were inflammatory. These are seasoned prosecutors. They know what they're doing. And it just shows how intentionally emotional and inflammatory their remarks were. And, again, like how I mentioned earlier, he continued in rebuttal to implore the jury to reach a verdict based on emotion instead of just the relevant evidence. The prosecutor also continued to convey improper and prejudicial impressions to the jury by suggesting that defense counsels somehow attempted to mislead the jury. He made a comment about comparing the defense counsel to the Wizard of Oz. And there he said defense counsels like the Wizard of Oz who hid behind the curtain and screens pay no attention to the man behind the wall. And he further explained that's what they're doing, paying no attention at all to the evidence in this case. Again, arguing this comment is improper because it shifted the focus of the jurors from the evidence at trial to the trial counsel's ability to advocate for her client. And also further with that, he mentioned something like if the trial had been like a basketball game, every witness would have slammed dunk. That also implies that defense counsel did not put up a proper defense for her client. So we are arguing that in light of these cumulative prosecutorial misconducts and misstatements and the abuse of discretion by emitting this prejudicial and cumulative video, Edward Hernandez is entitled to a new trial. If I may have some time to answer any questions on the included offense argument. Counsel, you had 15 minutes. So if you want to say, I'll give you a couple more minutes. So we're just arguing that. I don't have any questions on it, but. Okay. We're just arguing that we're asking the court to vacate the aggravated crime sex assault because applying the abstract elements test, Edward Hernandez would have not been able to commit the home invasion without first completing the aggravated crime sex assault. Thank you, Your Honor. Thank you, Counsel. May it please the court. Good morning, Your Honors. Again, I am Assistant State Security David Welch on behalf of the people of the state of Illinois. Turning to the defendant's first argument, the trial court in this case properly allowed the jury to view the victim-sensitive interview because it was an element of the charged offense. Your Honors, the state was required to prove each and every element beyond a reasonable doubt. And the offense of aggravated criminal sexual assault required that the state prove that SV had a severe disability that was so profound that she couldn't understand the nature of the act or give consent. Your Honors, the victim-sensitive interview in this case was taken one day after the attack. This isn't a doctor giving testimony years later. This is essential for the trial fact to, as Your Honor eloquently put it, to what we are seeing as believing. It was important for the jurors to see how SV interacted. It showed her inability to consent. It showed her inability to understand what was happening. It showed her inability to make any kind of outcry or describe what happened to her. It was essential for the trial fact to see that best piece of evidence. Further, Your Honors, there is some indication in the record that the defendant made statements to the police in which he said that SV referred to PP as the defendant was sexually touching her. As to some indication that the defendant may be making the assertion that he's trying to mitigate what had happened by insinuating that SV might have been some sort of a willing participant, it was also essential for the trial fact to be able to discount that defendant's statement to the police. It is clear from the video that this is not a normal 13-year-old girl. This is a severely and profoundly disabled child, and it was important that the trial fact see that and to see that this was how the defendant saw her the night of the attack. There is no question that he would have known that she was, in fact, severely and profoundly disabled. Was it prejudicial? It was not, Your Honor. As Your Honor pointed moments ago, there's nothing prejudicial about this. The defendant picked the victim, and he picked her precisely for those vulnerabilities. And the elements of the offense being that we had to prove beyond a reasonable doubt that she was severely and profoundly disabled, it was essential for that. Opposing counsel makes reference to seven witnesses, but the seven witnesses, their primary purpose on the scene was not to testify to her disabilities. It's important to put who she is in context. She can't tell the court. She can't tell the trial fact what happened that night. So putting everything into context, it was important to hear from the mother. It was important to hear from the father about what happened. It was important to hear from the detectives as to why they couldn't speak to her. All of that was helpful, and it was an essential element of the crime for the state to prove. Your Honors, the trial court properly allowed the jury to view the victim-sensitive interview. Turning to the second point, which is the prosecutor's comments on S.V.'s intellectual disabilities were proper. And they're proper because it was an element of the offense. It was essential for them to show the trier of facts that we did meet that burden. Further, Your Honors, any comments regarding the forensic sexual examination, that is evidence deduced at trial. The photograph, it showed that she couldn't understand the nature of the act of the defendant. She couldn't understand. She had this long process in which she was subject to this forensic examination by medical personnel, and yet there was no sense of distress because of her severe and profound intellectual disabilities. Further, Your Honor, there was no misconduct in the argument at all. The prosecutors properly commented on the evidence and properly responded to defense counsel. The entirety of the defendant's argument was essentially, one, it wasn't me attacking the DNA evidence and the reliability of the DNA evidence, and two, that the police didn't fully investigate the crime, that it was shoddy police work, focusing on a footprint that the police didn't end up photographing. And to that point, it's not the prosecutor's comments regarding the Wizard of Oz. There's a distinction between misled and misdirection, and misdirection is proper comment. Misleading implies some sort of assertion that there was deceit in there, and there was no comment from the prosecutor that was antagonistic or demeaning. There was no comment asserting that defense counsel had any kind of deceit. Prosecutors can comment on the defense of what the defendant's essentially putting forward. What's important is to look at the context of the Wizard of Oz statement in its entirety, and specifically what was said regarding the money shoe print, that it was taken six, five days later. Yeah, we could have tested the shoe prints, but we had DNA evidence and fingerprint evidence already, which is much better. You know, they're trying to get you to look at the shoe prints and not look at the DNA. They're trying to tell you to look at the shoe prints and not look at the fingerprint evidence. They don't want you to talk or think about four-day murder. Remember the Wizard of Oz, remember the scene where Dorothy and Toto and everybody is there, and the Wizard is discovered behind the curtain? That's what they're doing. Pay no attention to the evidence in this case. Look over there. The comment was about misleading. The defendant was asking the trier of fact to focus on a piece of evidence that was not essential and ignore the overwhelming evidence of DNA, of a fingerprint located outside Espy's bedroom window, to ignore the statements that he gave to police that were corroborated by Rosa Ramirez that was actually in the room. All of this evidence was overwhelming, and the prosecutors were right to comment on it, based on the defendant's theory of the case. The prosecutors' comments in closing were proper when viewed in the context of the entire record because they were based on the evidence, and the prosecutors properly commented on the weakness of the defendant's theory of the case and properly responded to defense counsel's arguments. Turning to the third point, which I understand was very briefly just touched upon, aggravated criminal sexual assault cannot be a lesser-included offense of home evasion. It goes against the Illinois Supreme Court's mandate in Miller to use the abstract analysis test. It is important that we use that abstract analysis because to do otherwise would end up in an absurd result and a horrific injustice. The legislature cannot possibly have determined that a defendant who breaks into someone's home to commit aggravated criminal sexual assault should be treated the same as somebody who commits criminal sexual assault out on the street. And we know that because aggravated criminal sexual assault and sexual offenses in general are treated so far more harshly than other offenses. Yes, home evasion is a class act, and aggravated criminal sexual assault is a class act, but as the second district in Boucher pointed out, the sentencing is so much more significant for sexual offenses. A three-year MSR on a mandatory supervised release on a home evasion versus three years to natural life on a criminal sexual assault. For the day-for-day credit, defendants convicted of home evasion can receive 50 percent credit, whereas in an aggravated criminal sexual assault, they must serve 85 percent of their sentence. All of these things show that the legislature contemplated that the aggravated criminal sexual assault is, in fact, the greater offense. What about the abstract elements test itself? And it is the correct test to use as espoused by Miller in 2010. There is no question that Miller says when there are two charged offenses, the abstract elements applies. What defendant is asking is for us to return to the charging documents analysis, and that simply is not, it goes against what the owner of the Supreme Court said in Miller. It is important to look at the statutes in the abstract and to sort of figure out legislative intent from that, and that's what we can do here by looking at the statute, and Boucher was correct in that reasoning. Your Honors, if there are no further questions, for these reasons and those expressed in our briefs, we ask that you affirm the defendant's convictions and sentence. Thank you. Thank you. Rebuttal. Your Honors, seen is believing. And the best evidence of SV's intellectual disability is that photo taken hours after the assault, not the VSI, which was taken days after. Also, regarding the Wizard of Oz, by referring to don't look behind the curtain, that is implying that defense counsel fabricated some type of defense and is pointing to some type of deceit. If we were to follow the state's argument, any time a defense counsel advocates for her client, which is what she was doing, she was trying to make sure, you know, for the jury to make sure that the state met the burden beyond a reasonable doubt. She was just advocating. That does not allow the state to come in and rebuttal say that there was some type of deceit. Just briefly about the home invasion, we're not asking for this court to apply the charging instrument approach. As at least one member of this panel knows in an unpublished decision in People v. Carter, the Miller approach is asking you to go just to the subsection that is charged in the offense, not the language used to frame the charge in the indictment. That is what's compared. And the state did not respond at all to, there is legislative history to show that when the predicate offense of, the predicate of a sex offense was added to a home invasion, the court, the legislator intended to treat it as a predicate. They're stuck with the consequences of that. As in predicates for felony murder or armed violence, two convictions cannot stand when the predicate offense is the lesser included. And for the reasons argued today and the reasons argued in briefing, we ask that either Edwin Hernandez go to the trial due to the pervasive misconduct and the inflammatory evidence that was the cumulative effect in either of the fair trial. And alternatively, we ask that under the abstracts elements task that this court apply, that we find that the home invasion couldn't be completed without the ad crim sex assault. And we ask for that count to be vacated. Thank you. I thank you both. And we will take the case under advisement.